Matter of Jase M. (Holly N.) (2021 NY Slip Op 00471)





Matter of Jase M. (Holly N.)


2021 NY Slip Op 00471


Decided on January 28, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 28, 2021

530555

[*1]In the Matter of Jase M., Alleged to be a Permanently Neglected Child. Cortland County Department of Social Services, Respondent; Holly N., Appellant. (Proceeding No. 1.)
In the Matter of Jase M., Alleged to be a Permanently Neglected Child. Cortland County Department of Social Services, Respondent; Timothy M., Appellant. (Proceeding No. 2.)

Calendar Date: January 11, 2021

Before: Lynch, J.P., Clark, Mulvey, Pritzker and Colangelo, JJ.


Lisa K. Miller, McGraw, for Holly N., appellant.
Rural Law Center of New York, Castleton (Kelly L. Egan of counsel), for Timothy M., appellant.
Cortland County Department of Social Services, Cortland (Keith I. Cassidy of counsel), for respondent.
Susan B. McNeil, Brooktondale, attorney for the child.



Colangelo, J.
Appeals from two decisions and an order of the Family Court of Cortland County (Campbell, J.), entered September 26, 2019, October 4, 2019 and October 22, 2019, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondents' parental rights.
Respondent Holly N. (hereinafter the mother) and respondent Timothy M. (hereinafter the father) are the parents of the subject child (born in 2016). The child has been in the continuous care, custody and guardianship of petitioner since petitioner commenced neglect proceedings against respondents in October 2017. The petitions in those proceedings alleged, among other things, that incidents of domestic violence occurred in the presence of the child and his half brother,[FN1] that the child had unexplained bruising that occurred when the father, who has a criminal history and suffered from substance abuse and mental health issues, was the child's sole caretaker, and that the mother, aware of the father's violent propensities and his untreated mental health issues and ongoing substance abuse, continued to allow the child to be solely in the father's care. In December 2017, respondents consented to findings of neglect, to the child remaining in petitioner's custody and to engage in and successfully complete certain services. In March 2019, petitioner commenced these two permanent neglect proceedings seeking to terminate respondents' parental rights on the grounds that the child had been in petitioner's care for a continuous one-year period and respondents failed to plan for the future of the child. Following a combined fact-finding hearing and dispositional hearing with respect to both petitions, Family Court adjudicated the child to be permanently neglected by respondents, terminated their parental rights and transferred guardianship and custody of the child to petitioner in order to free the child for adoption. Thereafter, an October 22, 2019 order of disposition was entered, prompting these appeals by respondents.[FN2]
Respondents argue that petitioner failed to establish by clear and convincing evidence that they permanently neglected the child. "A permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for a period of more than one year following the date such child came into the care of an authorized agency, substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship. Where, as here, petitioner seeks to terminate parental rights on the basis of permanent neglect, it must establish, by clear and convincing evidence, that it has made diligent efforts to encourage and strengthen the parent's relationship with the child[]" (Matter of Arianna [*2]K. [Maximus L.], 184 AD3d 967, 968 [2020] [internal quotation marks and citations omitted]; see Social Services Law § 384-b [3] [g] [i]; [7] [a]). "Diligent efforts will be found when the agency makes practical and reasonable efforts to ameliorate the problems preventing reunification and to strengthen the family relationship through means such as assisting the parent[s] with visitation, providing information on the child's progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Jason O. [Stephanie O.], 188 AD3d 1463, 1464-1465 [2020] [internal quotation marks, brackets and citations omitted]; see Matter of Isabella H. [Richard I.], 174 AD3d 977, 978 [2019]; Matter of Alexander Z. [Jimmy Z.], 149 AD3d 1177, 1178 [2017]).
The record establishes that petitioner's caseworker began working with respondents after the child and his half brother were removed from their care. The initial caseworker supervised visits at the family home, arranged for supervised visits to take place at the Elmcrest Family Support Program and referred the mother and the father to parenting classes and coached visitation. The caseworker also referred the mother to Aid to Victims of Violence, a program that provides counseling and housing assistance for victims of domestic violence, and for a substance abuse evaluation. The father was referred for a drug and substance abuse evaluation and to the Non-Violent Alternatives Program to address the domestic violence in the home. Petitioner's caseworkers made monthly visits to the child's foster home and to respondents' home to determine its appropriateness for visitation and offered transportation assistance to facilitate respondents' supervised visitation at Elmcrest. In addition, petitioner's caseworkers attended family support sessions with respondents at Elmcrest and arranged and participated in several family team meetings with respondents to discuss, among other things, the service plan, respondents' level of engagement with services and the reason for the child's removal and placement in foster care. In our view, "[a]s the record reveals petitioner's consistent efforts to ameliorate the conditions that led to the child's removal and to strengthen [respondents'] relationship with the child, Family Court did not err in determining that petitioner established, by clear and convincing evidence, that it made diligent efforts to encourage and strengthen the parental relationship" (Matter of Brielle UU. [Brandon UU.], 167 AD3d 1169, 1172 [2018]; see Matter of Jace N. [Jessica N.], 168 AD3d 1236, 1238 [2019], lv denied 32 NY3d 918 [2019]).
We also find that petitioner satisfied its burden of proving by clear and convincing evidence that respondents failed to substantially plan for the child's future. "To substantially plan, a parent must, at a minimum, take meaningful steps to correct the conditions that led to the child's initial removal. The parent's [*3]plan must be realistic and feasible[,] and his or her good faith effort, alone, is not enough" (Matter of Brielle UU. [Brandon UU.], 167 AD3d at 1172 [internal quotation marks and citations omitted]; see Matter of Jace N. [Jessica N.], 168 AD3d at 1239).
The evidence at the fact-finding hearing established that, in the roughly 23 months during which the child was in petitioner's care, neither the mother nor the father fulfilled the obligation to substantially plan for the child. The father continued to test positive for heroin and other illicit substances, failed to engage in the recommended anger management program, threatened the physical safety of assigned caseworkers and failed to advance to unsupervised visitation. The evidence also established that the father was discharged from various substance abuse programs as a result of his failure to attend and/or comply with treatment recommendations. In addition, the father's probation officer testified that three probation violation proceedings were commenced against the father in 2018 as a result of, among other things, arrests for aggravated unlicensed operation of a motor vehicle, failure to engage in counseling, failure to engage in inpatient drug treatment and multiple positive tests for opiates, suboxone and heroin. The father was incarcerated following the third violation while the child was in petitioner's care.
With regard to the mother, the evidence established that she minimized the impact of the father's abusive behavior and drug use and demonstrably failed to appreciate the significant risk that the father poses to the child's safety. She continued to cohabitate with the father and characterized his heroin use as a "pain issue." While the mother was enrolled in mental health treatment at the time of the hearing, she had been previously discharged and continued to attend sporadically. Although the mother completed many of the other required services, such as the Power to Change Group through Aid to Victims of Violence, a parenting class through Elmcrest and the Non-Violent Alternatives Program, she did not benefit from them and failed to take any meaningful steps to separate herself from the father. The psychologist retained by petitioner to evaluate respondents testified that, during the interview, the father's responses were "dismissive," "perfunctory" and not truthful at all. The mother, in the psychologist's opinion, was "forthcoming," but the mother failed to believe that there was a serious concern regarding the father's treatment of the child and did not admit that there was domestic violence in the house. According to the psychologist, it was a "long shot" that the mother would leave the father. In our view, a sound and substantial basis exists in the record to support Family Court's determination that, despite petitioner's diligent efforts, respondents failed to adequately plan for the child's future by addressing the problems that prevented the child's return to [*4]their care (see Matter of Arianna K. [Maximus L.], 184 AD3d at 971). Furthermore, based upon the evidence adduced at the dispositional hearing and according deference to Family Court's credibility assessments, we agree with Family Court that terminating respondents' parental rights and freeing the child for adoption, rather than issuing a suspended judgment, is in the child's best interests (see Matter of Jason O. [Stephanie O.], 188 AD3d at 1468; Matter of Corey MM. [Cassandra LL.], 177 AD3d 1119, 1124 [2019]; Matter of Brielle UU. [Brandon UU.], 167 AD3d at 1174-1175).
Turning to respondents' remaining contentions, we find unavailing the mother's contention that Family Court abused its discretion by taking judicial notice of prior proceedings. "It is well settled that a court may take judicial notice of its own prior proceedings and orders and is vested with broad discretion in determining the parameters for proof to be accepted at the hearing" (Matter of Sabrina B. v Jeffrey B., 179 AD3d 1339, 1341 [2020] [internal quotation marks and citations omitted]). Assuming, without deciding, that Family Court improperly admitted into evidence the father's entire probation file, we find such error to be harmless based upon the overwhelming evidence of permanent neglect presented here (see Matter of Lance Q.M. [Antwanette Q.B.], 181 AD3d 886, 887-888 [2020], lvs denied 35 NY3d 908, 909 [2020]; Matter of Melisha M.H. [Sheila B.R.], 119 AD3d 788, 788-789 [2014]).
Finally, we find no merit to the father's claim that he was deprived of the effective assistance of counsel. "To maintain a claim of ineffective assistance of counsel, a party must demonstrate that he or she was deprived of meaningful representation as a result of his or her lawyer's deficiencies" (Matter of Nicole R. v Richard S., 184 AD3d 978, 983 [2020] [internal quotation marks and citations omitted]; see Matter of Amy TT. v Ryan UU., 183 AD3d 988, 991 [2020]). During the hearing, counsel extensively cross-examined witnesses, presented a cogent closing argument and successfully objected to the introduction of evidence and prejudicial testimony. Therefore, we find that the father received meaningful representation (see Matter of Nicole R. v Richard S., 184 AD3d at 982; Matter of Amy TT. V Ryan UU., 183 AD3d at 991). To the extent that we have not specifically addressed any of respondents' remaining contentions, we have considered those arguments and find them to be without merit.
Lynch, J.P., Clark, Mulvey and Pritzker, JJ., concur.
ORDERED that the appeals from the decisions entered September 26, 2019 and October 4, 2019 are dismissed, without costs.
ORDERED that the order entered October 22, 2019 is affirmed, without costs.



Footnotes

Footnote 1: The father's older child, who was residing in respondents' home, was removed. This child is currently in the care of his biological mother and is not the subject of the instant proceedings.

Footnote 2: The mother's appeals from a September 26, 2019 fact-finding decision and an October 4, 2019 dispositional decision must be dismissed, as no appeal lies from such decisions (see Family Ct Act § 1112 [a]; Matter of Isabella H. [Richard I.], 174 AD3d 977, 978 n 2 [2019]). Nevertheless, the issues raised with respect to the decisions necessarily come up for review upon the appeal from the October 22, 2019 dispositional order (see Matter of Keadden W. [Hope Y.], 165 AD3d 1506, 1507 [2018], lv denied 32 NY3d 914 [2019]; Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d 1077, 1077 n [2018]).