Matter of Leon YY. (Christopher ZZ.) (2022 NY Slip Op 03556)

Matter of Leon YY. (Christopher ZZ.)

2022 NY Slip Op 03556

Decided on June 2, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 2, 2022

533339
[*1]In the Matter of Leon YY., Alleged to be a Permanently Neglected Child. Delaware County Department of Social Services, Respondent; Christopher ZZ., Appellant.

Calendar Date:April 19, 2022

Before:Lynch, J.P., Clark, Aarons, Colangelo and McShan, JJ.

Joseph A. Ermeti, Public Defender, Delhi (George V. Collins III of counsel), for appellant.
Amy B. Merklen, County Attorney, Delhi (Christine McCue of counsel), for respondent.
Larisa Obolensky, Delhi, attorney for the child.

Colangelo, J.
Appeals from two orders of the Family Court of Delaware County (Rosa, J.), entered November 17, 2020 and February 25, 2021, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent's parental rights.
Respondent (hereinafter the father) is the father of a child (born in 2013). In May 2017, the child was removed from the mother's home and placed into the care and custody of petitioner. The child remained in petitioner's care and, in November 2018, petitioner commenced this proceeding against the father seeking to adjudicate the child to be permanently neglected by him and to terminate his parental rights. Petitioner also commenced a separate permanent neglect proceeding against the mother, who ultimately surrendered her parental rights. Following a fact-finding hearing, Family Court determined that the child had been permanently neglected by the father. Following a dispositional hearing, the court concluded that the child's best interests would be served by terminating the father's parental rights and freeing the child for adoption. The father appeals.[FN1]
"As relevant here, a permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for at least one year after the child came into the agency's care, to substantially and continuously or repeatedly 'plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship'" (Matter of Makayla I. [Sheena K.], 201 AD3d 1145, 1147 [2022] [internal quotation marks and citations omitted], lvs denied 38 NY3d 903 [2022], quoting Social Services Law § 384-b [7] [a]; see Matter of Jase M. [Holly N.], 190 AD3d 1238, 1240 [2021], lvs denied 37 NY3d 901 [2021]). "As a threshold matter, the agency must prove — by clear and convincing evidence — that it made diligent efforts to encourage and strengthen the parent's relationship with the child" (Matter of Makayla I. [Sheena K.], 201 AD3d at 1147 [internal quotation marks and citations omitted]). To satisfy its duty of diligent efforts, "[a] petitioner must make practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child's progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (id. [internal quotation marks and citations omitted]; see Social Services Law § 384-b [7]; Matter of Jason O. [Stephanie O.], 188 AD3d 1463, 1464-1465 [2020], lv denied 36 NY3d 908 [2021]; Matter of Isabella H. [Richard I.], 174 AD3d 977, 978 [2019]).
The record supports Family Court's determination that, despite petitioner's diligent efforts, the father failed to meaningfully plan for [*2]the child's future for a period of at least one year. The testimony at the hearing, including the father's own admissions, evinces that the father failed to obtain suitable housing for the child, moving numerous times during petitioner's involvement in the case and repeatedly failing to permit petitioner's caseworkers to assess the homes he claimed to reside in. At one point, the father moved to the Village of Hancock, Delaware County, which was closer to the child's foster home placement and was approved by petitioner for visits with the child. The father then moved farther away from the child into his brother's trailer, claiming that the home in Hancock "wasn't to [his] standards," despite having told petitioner that he had purchased a house in the City of Oneonta, Otsego County, which failed the city's inspection. During the fact-finding hearing, the father moved again, to an apartment in the Town of Walton, Delaware County and again refused to allow petitioner to assess the apartment for safety. The record reveals that the father only permitted petitioner to assess the safety of his living arrangements twice in the numerous moves made since the commencement of the case.
Since the child was placed in foster care, petitioner offered and facilitated supervised visitation between the father and the child. As time progressed, supervised visits were increased to twice per week and were scheduled in consultation with the father. Nevertheless, the father missed approximately half of the visits and half of the parent education sessions offered to him. The testimony of a parent educator, who provided parent education, supervised visits and transportation for the father's visits from April 2018 through September 2018, established that during the visits the father would "talk above [the child's] level" and would often engage in behaviors that were inappropriate. As Family Court noted, the father "boasted to the child that he was a millionaire and owned many houses." The testimony established that during the parent education sessions, the father talked about himself, boasting about his millions of dollars, 15 houses and brand-new cars; he would not talk about the child or the child's needs. Moreover, the father would not take instruction and recommendations provided by the parent educators that were designed to remediate his parenting issues. Significantly, testimony established that visitation between the father and the child led to the child's increased bed wetting.
The father also refused to attend mental health services recommended to him by petitioner. Despite his testimony that he volunteered to attend such services, it was clear from Family Court's dispositional order that the mental health evaluation to which the father eventually submitted was court-ordered, on application by petitioner.
The record reveals that during the pendency of this case, which spans approximately 3½ years, the father was offered services in the nature of [*3]casework counseling, parent aide services, parent education services, foster care services, caseworker management, mental health services and transportation services. These services were periodically reviewed and approved by Family Court during permanency hearings attended by the father. As such, Family Court did not err in determining that petitioner satisfied its threshold burden of establishing that it exercised diligent efforts to encourage and strengthen the parental relationship (see Matter of Jase M. [Holly N.], 190 AD3d at 1240-1241; Matter of Dawn M. [Michael M.], 174 AD3d 972, 973-974 [2019], lv denied 34 NY3d 907 [2020]).
Petitioner also satisfied its burden of proving by clear and convincing evidence that the father failed to substantially plan for the child's future inasmuch as he never provided information that could be substantiated regarding his housing and, thus, failed to obtain suitable housing. Moreover, the father's failure to consistently appear for scheduled visits and parent education sessions and his refusal of other services hindered any ability to progress to unsupervised visits or to demonstrate the capacity to provide appropriate parental care for the child. In short, the father failed to take meaningful steps to correct the conditions that led to the child's removal (see Social Services Law § 384-b [7] [c]; Matter of Makayla I. [Sheena K.], 201 AD3d at 1147; Matter of Colby R. [David Q.], 199 AD3d 1192, 1195 [2021]; Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d 1077, 1077-1078 [2018]). Thus, deferring to the credibility determinations of Family Court, we agree that the father permanently neglected the child (see Matter of Colby R. [David Q.], 199 AD3d at 1196).
We further find that Family Court's decision to terminate the father's parental rights, as opposed to granting a suspended judgment, is supported by a sound and substantial basis in the record (see Matter of Isabella H. [Richard I.], 174 AD3d at 982; Matter of Illion RR. [Rachael SS.], 154 AD3d 1126, 1128 [2017], lv denied 30 NY3d 908 [2018]). "A suspended judgment offers a brief grace period designed to prepare the parent to be reunited with the child, but is only appropriate where a delay would be consonant with the best interests of the child" (Matter of Isabella H. [Richard I.], 174 AD3d at 981-182 [internal quotation marks and citations omitted]). As Family Court determined, a suspended judgment would not have been in the child's best interests. Under the circumstances that obtain in this case, and considering that the child has been living with his foster family, with whom he has a very close relationship, since 2018, there is a sound and substantial basis in the record to support Family Court's finding that termination of the father's parental rights was in the child's best interests (see Matter of Isabella H. [Richard I.], 174 AD3d at 982; Matter of Illion RR. [Rachael SS.], 154 AD3d at 1128). We note that the attorney for the child supports [*4]this determination as being in the child's best interests.
We reject the father's claim that he was denied the effective assistance of counsel. "To maintain a claim of ineffective assistance of counsel, a party must demonstrate that he or she was deprived of meaningful representation as a result of his or her lawyer's deficiencies" (Matter of Nicole R. v Richard S., 184 AD3d 978, 983 [2020] [internal quotation marks and citations omitted]; see Matter of Jase M. [Holly N.], 190 AD3d at 1243; Matter of Amy TT. v Ryan UU., 183 AD3d 988, 991 [2020]). The record reflects that although the father initially declined court-appointed counsel, he appeared with retained counsel on the first day of the hearing. Counsel was relieved prior to the second day of the hearing, and Family Court granted the father's request to be assigned counsel at the next hearing and adjourned the matter. When the hearing reconvened, the father presented his case with the benefit of assigned counsel and was permitted by the court to cross-examine the witnesses that testified during the short period that he represented himself. In view of the foregoing, the father was not deprived of the effective assistance of counsel.
Lynch, J.P., Clark, Aarons and McShan, JJ., concur.
ORDERED that the appeal from the order entered November 17, 2020 is dismissed, without costs.
ORDERED that the order entered February 25, 2021 is affirmed, without costs.

Footnotes

Footnote 1: "[A]s no appeal lies from a nondispositional order in a permanent neglect proceeding," the father's appeal from the November 2020 fact-finding order must be dismissed (Matter of Isabella H. [Richard I.], 174 AD3d 977, 978 n 2 [2019]). Nevertheless, issues concerning that order may be addressed in the appeal from the dispositional order.