Matter of Issac Q. (Kimberly R.) (2023 NY Slip Op 00356)

Matter of Issac Q. (Kimberly R.)

2023 NY Slip Op 00356

Decided on January 26, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 26, 2023

533759
[*1]In the Matter of Issac Q., Alleged to be a Permanently Neglected Child. Schuyler County Department of Social Services, Respondent; Kimberly R., Appellant.

Calendar Date:December 15, 2022

Before:Garry, P.J., Lynch, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Lisa K. Miller, McGraw, for appellant.
Steven J. Getman, County Attorney, Watkins Glen (Kristin E. Hazlitt of counsel), for respondent.
Andrea J. Mooney, Ithaca, attorney for the child.

Lynch, J.
Appeal from an order of the Family Court of Schuyler County (Matthew C. Hayden, J.), entered July 23, 2021, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent's parental rights.
Respondent is the mother of the subject child (born in 2006), who has special needs and attends counseling to address behavioral concerns. In March 2018, a neglect proceeding against respondent was resolved by an adjournment in contemplation of dismissal, with an order of disposition requiring her to, among other things, maintain safe and appropriate housing and adequately supervise the child and his five younger siblings. Less than a month later, petitioner received a hotline call regarding the child and became concerned that respondent was not appropriately supervising him. The child was temporarily removed from the home and placed in petitioner's care, and a proceeding was commenced to hold respondent in violation of the prior order of disposition. In January 2019, respondent consented to a neglect finding with respect to the child and his five younger siblings, and the child's placement in petitioner's custody was continued.
In May 2020, petitioner commenced this permanent neglect proceeding seeking to terminate respondent's parental rights to the child, alleging that, despite its diligent efforts to strengthen the parental relationship, respondent failed to adequately plan for the child's future. Following a fact-finding hearing,[FN1] Family Court adjudicated the child to be permanently neglected by respondent and, after a dispositional hearing, terminated her parental rights.[FN2] Respondent appeals.
To the extent respondent raises arguments directed at the initial removal of the child in connection with the neglect proceeding resulting in the January 2019 consent order, that proceeding is not before us on this appeal and her arguments in that respect are misdirected (see Matter of Jihad N. [Devine N.], 180 AD3d 1164, 1165 [3d Dept 2020]). As for the heart of the dispute, we conclude that there is a sound and substantial basis in the record to support Family Court's determination that respondent permanently neglected the child.
"[A] permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for at least one year after the child came into the agency's care, to substantially and continuously or repeatedly plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Matter of Leon YY. [Christopher ZZ.], 206 AD3d 1093, 1094 [3d Dept 2022] [internal quotation marks and citation omitted]; accord Social Services Law § 384-b [7] [a]). "[D]iligent efforts . . . mean[s] reasonable attempts by an authorized agency to assist, develop and encourage a meaningful relationship between [*2]the parent and child" (Social Services Law § 384-b [7] [f]), and the petitioning agency bears the burden of proving — by clear and convincing evidence — that such diligent efforts were made (see Matter of Jase M. [Holly N.], 190 AD3d 1238, 1241 [3d Dept 2021], lvs denied 37 NY3d 901 [2021]). "[T]he petitioning agency 'will be deemed to have fulfilled [that] obligation if appropriate services are offered but the parent refuses to engage in them or does not progress'" (Matter of Dawn M. [Michael M.], 174 AD3d 972, 973 [3d Dept 2019], lv denied 34 NY3d 907 [2020], quoting Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1003-1004 [3d Dept 2017]).
Once diligent efforts have been shown, the petitioner must then prove "by clear and convincing evidence that [the] respondent[] failed to substantially plan for the child[]'s future" (Matter of Makayla I. [Sheena K.], 201 AD3d 1145, 1148 [3d Dept 2022] [internal quotation marks and citation omitted], lvs denied 38 NY3d 903 [2022]). "'[T]o plan for the future of the child' . . . mean[s] to take such steps as may be necessary to provide an adequate, stable home and parental care for the child within a period of time which is reasonable under the financial circumstances available to the parent. The plan must be realistic and feasible, and good faith effort shall not, of itself, be determinative. In determining whether a parent has planned for the future of the child, the court may consider the failure of the parent to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent" (Social Services Law § 384-b [7] [c]).
Respondent initially argues that petitioner did not engage in diligent efforts tailored to ameliorate the problems resulting in the child's removal — an inquiry that necessitates an assessment of the circumstances underlying such removal and the concerns preventing reunification (see generally Matter of Colby R. [David Q.], 199 AD3d 1192, 1194-1195 [3d Dept 2021]). The evidence at the fact-finding hearing demonstrated that respondent and the child have a fraught relationship. The child, who has behavioral challenges and special needs, requires structure, consistency and a calm environment. The child's placement and continuation in foster care was precipitated by, among other things, concerns that respondent was not appropriately supervising him and that the home environment — a two-bedroom trailer occupied by the child's stepfather and five siblings — was too chaotic.
Testimony from the fact-finding hearing established that petitioner provided respondent with a multitude of services to address these issues, including mental health counseling, anger management courses, parenting education classes that taught appropriate discipline techniques and strategies to handle behavioral issues, referrals for housing assistance, family team meetings and weekly visitation with the child, including suggestions about how respondent [*3]could improve her relationship with him. The child was also provided with appropriate services, including mental health counseling and anger management courses, as well as various early intervention and school-based services. On this record, we conclude that petitioner proved by clear and convincing evidence that diligent efforts were made to encourage and strengthen the parental relationship (see Matter of Makayla I. [Sheena K.], 201 AD3d at 1148; Matter of Colby R. [David Q.], 199 AD3d at 1194-1195).
Notwithstanding such diligent efforts, petitioner also established, by clear and convincing evidence, that respondent failed to substantially plan for the child's future. Although respondent largely participated in the services required of her, she had been unsuccessfully discharged from mental health counseling six times in a 10-year period, and there were ongoing concerns about returning the child to her care. In that regard, despite being aware that the child needed supervision and structure, respondent was not living in the familial home, instead residing at her neighbor's residence with five other adults and four children. The child's younger siblings were living with the stepfather in the family's two-bedroom trailer,[FN3] but they spent a good deal of time at the neighbor's residence, with respondent describing the two households as "one big, huge family."[FN4] When the family was over at the neighbor's household, it sometimes resulted in upwards of 20 people being in that location at once. The testimony indicated that various people moved in and out of the neighbor's residence and, as noted by Family Court, respondent described one person who lived at the neighbor's residence for a period of time as a "complete whacko." Another person who briefly resided there was involved in a criminal matter and had hidden guns around the property. Despite respondent's awareness that the living arrangement was inappropriate for the child, that he was uncomfortable with the stepfather and that he required his own room to unwind, respondent had not followed through with a referral to obtain more suitable housing and, at the time of the fact-finding hearing, lacked a concrete plan to move out of the neighbor's residence.
Moreover, a parenting educator at Cornell Cooperative Extension explained that, although she had made 30 to 40 home visits and spent copious amounts of time teaching respondent about appropriate disciplinary techniques and how to effectively respond to poor behavior, respondent had not meaningfully implemented these techniques when dealing with the child's siblings. Several other care providers echoed the same concerns, noting that respondent continually struggled with lack of consistent follow-through on safety plans and had not made sufficient progress to provide the child with the structure and supervision he required.
At the time of the fact-finding hearing, respondent also had not made progress to improve her relationship with the child. In [*4]that regard, there was testimony that she "picked on [the child] a lot," often spoke to him "like a friend," and would criticize, humiliate and ridicule him during visitation. The child's foster care caseworker revealed that the child often did not want to visit with respondent unless he believed that she was going to bring him money or gifts. Respondent frequently failed to keep her promises in this regard, causing the child to have meltdowns when she arrived for visitation without the items she had promised. Moreover, during a family therapy session with the child, respondent blamed him for everything that had happened, resulting in her being banned from future sessions upon the counselor's opinion that it was not in the child's best interests for her to attend.
Notwithstanding certain favorable testimony from respondent's therapist — who generally praised respondent for the progress she had made during their time working together — we readily conclude on this record that respondent failed to substantially plan for the child's future. Indeed, there was ample proof that respondent had made little to no progress in ameliorating the issues that led to the child's removal and his continued placement in foster care. She continued to struggle with lack of follow-through on safety plans, had no feasible plan to provide the child with the type of living environment he required, had not taken the necessary steps to improve their relationship and had not demonstrated the capacity to provide appropriate care for the child based upon his needs. Accordingly, when deferring to Family Court's credibility determinations, we conclude that there is a sound and substantial basis in the record to support the permanent neglect finding (see Matter of Leon YY. [Christopher ZZ.], 206 AD3d at 1096; Matter of Logan C. [John C.], 169 AD3d 1240, 1244-1245 [3d Dept 2019]).
We are also unpersuaded by respondent's argument that Family Court should have issued a suspended judgment instead of terminating her parental rights. " 'Following an adjudication of permanent neglect, the sole concern at a dispositional hearing is the best interests of the child and there is no presumption that any particular disposition, including the return of a child to a parent, promotes such interests' " (Matter of Jason O. [Stephanie O.], 188 AD3d 1463, 1467 [3d Dept 2020], lv denied 36 NY3d 908 [2021], quoting Matter of Angelica VV., 53 AD3d 732, 733 [3d Dept 2008] [citations omitted]; see Matter of Michael B., 80 NY2d 299, 312 [1992]). "Where appropriate, Family Court may issue a suspended judgment to afford the parent a finite period of time within which to become a fit parent with whom the child can be safely reunited" (Matter of Jason O. [Stephanie O.], 188 AD3d at 1467-1468 [citations omitted]; see Family Ct Act § 633). However, a suspended judgment is warranted "only when 'the parent, under the facts presented, has clearly demonstrated that he or she deserves another opportunity to show [*5]that he or she has the ability to be a fit parent' " (Matter of Jason O. [Stephanie O.], 188 AD3d at 1468 [brackets omitted], quoting Matter of Anastasia FF., 66 AD3d 1185, 1187 [3d Dept 2009], lv denied 13 NY3d 716 [2010]).
Although respondent indicated at the dispositional hearing that she was taking steps to address her living arrangement — representing that she had served the stepfather with a 30-day eviction notice to vacate the trailer and that the child could have the stepfather's room there if he was returned to her care — testimony revealed that she continued to live at the neighbor's residence at the time of her testimony. Notwithstanding that respondent had since limited the amount of time that the children were at the neighbor's residence — helping to decrease the chaos of her living situation — a caseworker with Schuyler County Children's Services noted ongoing concerns with respect to respondent's relationship with the stepfather and the instability created by the fact that she continued to go back and forth between residences. That caseworker also relayed that another hotline call had been placed concerning a lack of supervision over the children still in respondent's care.
In contrast, the testimony at the dispositional hearing demonstrated that the child had made significant progress since being removed from the home in April 2018 and was doing well in his current foster care placement. The foster parents were an adoptive resource for the child and were willing to facilitate visitation with his siblings if he remained in their care. Given the length of time the child has been in foster care and respondent's repeated failure to remedy the concerns that led to the child's removal — as evidenced by the new hotline call alleging a continued lack of appropriate supervision — we conclude that there is a sound and substantial basis in the record to support Family Court's determination to terminate her parental rights (see Matter of Leon YY. [Christopher ZZ.], 206 AD3d at 1097-1098; Matter of Jason O. [Stephanie O.], 188 AD3d at 1467).
As a final matter, respondent contends that Family Court erred during a January 2021 permanency hearing — held prior to commencement of the fact-finding hearing — when it adopted concurrent permanency goals of freeing the child for adoption and returning him to her care. Although respondent is correct that Family Court is prohibited from "adopt[ing] seemingly inconsistent concurrent permanency goals of freeing the child for adoption and returning him to [the respondent-parent's] custody" (Matter of Samuel DD. [Margaret DD.], 123 AD3d 1159, 1163 n 4 [3d Dept 2014], lv denied 24 NY3d 918 [2015]; see Family Ct Act § 1089 [d] [2] [i]), even assuming that the court erred in this regard, the underlying permanency order is not included in the record and no appeal was taken therefrom (see Matter of Timothy GG. [Meriah GG.], 163 AD3d 1065, 1066 [3d Dept 2018], lvs denied 32 NY3d 908 [2018]; Matter of Samuel DD[*6]. [Margaret DD.], 123 AD3d at 1163 n 4; compare Matter of Dakota F. [Angela F.], 92 AD3d 1097, 1099 [3d Dept 2012]).[FN5] Under the circumstances presented, we are unpersuaded that any error made by the court in this regard would constitute a basis to disturb the permanent neglect finding and resulting disposition on appeal (see Matter of Samuel DD. [Margaret DD.], 123 AD3d at 1163 n 4).
Garry, P.J., Aarons, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The fact-finding hearing concerned both the instant petition and a neglect petition regarding the five other children. A related appeal is currently pending before this Court from the dispositional order entered in connection with the neglect proceeding concerning the other children.

Footnote 2: The court did not free the child for adoption because, at that time, the father's parental rights remained intact. The parties have informed us that the father's parental rights have since been terminated.

Footnote 3: One of the children sometimes slept next door with respondent.

Footnote 4: Respondent and the stepfather were married but separated at the time of the fact-finding hearing.

Footnote 5: The transcript from the January 2021 hearing contains too many statements that were inaudible to the transcriber to enable this Court to determine whether Family Court actually imposed two such conflicting goals rather than merely sanctioning a permanency goal of return to parent "but with the intention that [petitioner] engage in concurrent planning for the child in case he could not be returned to [respondent]" (Matter of Timothy GG. [Meriah GG.], 163 AD3d at 1067 [emphasis added]). Notwithstanding our inability to confirm respondent's contention in this regard, we need not remit the matter for a reconstruction hearing because, even if Family Court did erroneously impose inconsistent concurrent permanency goals, it would not result in reversal of the dispositional order.