Matter of Dustin D. (Paul D.) (2023 NY Slip Op 06579)

Matter of Dustin D. (Paul D.)

2023 NY Slip Op 06579

Decided on December 21, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 21, 2023

CV-22-2311
[*1]In the Matter of Dustin D., Alleged to be a Permanently Neglected Child. Saratoga County Department of Social Services, Respondent; Paul D., Appellant.

Calendar Date:November 14, 2023

Before:Egan Jr., J.P., Pritzker, Fisher, McShan and Powers, JJ.

Sandra M. Colatosti, Albany, for appellant.
Michelle W. Granger, County Attorney, Ballston Spa (Nicholas M. Martin of counsel), for respondent.
Elena Jaffe Tastensen, Saratoga Springs, attorney for the child.

Powers, J.
Appeal from an order of the Family Court of Saratoga County (Paul Pelagalli, J.), entered November 30, 2022, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the child to be permanently neglected, and terminated respondent's parental rights.
Respondent (hereinafter the father) is the parent of a child (born in 2014). In 2017, the child was removed and placed into the care and custody of petitioner due to allegations that the father made the child touch his genitals. Petitioner thereafter commenced a Family Ct Act article 10 proceeding and Family Court entered a finding of neglect upon the father's consent. A criminal case was also brought, and the father pleaded guilty, resulting in County Court issuing an order of protection requiring the father to stay away from the child for a period of 10 years, until January 2029. The father was directed to, as relevant here, undergo substance abuse evaluations, a sex offender risk assessment evaluation and a domestic violence treatment program, follow all recommendations and apply for modification only after successful completion of substance abuse, sex offender and domestic violence treatment programs. The child remained in the care and custody of petitioner, and, in February 2021, petitioner commenced this proceeding seeking to adjudicate the child to be permanently neglected. Following a fact-finding hearing, Family Court determined that the father permanently neglected the child. After a dispositional hearing, the court concluded that the child's best interests would be served by terminating the father's parental rights and freeing the child for adoption. The father appeals.
As relevant here, a permanently neglected child is one "who is in the care of an authorized agency and whose parent . . . has failed for a period of either at least one year or [15] out of the most recent [22] months following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child" (Social Services Law § 384-b [7] [a]; see Matter of Jason O. [Stephanie O.], 188 AD3d 1463, 1464 [3d Dept 2020], lv denied 36 NY3d 908 [2021]).
The father first argues that petitioner failed to demonstrate, by clear and convincing evidence, that it made diligent efforts to reunite the father with the child. Specifically, the father contends that, rather than arranging referrals to alternate sex offender treatment programs, petitioner encouraged him to return to a particular agency provider for the requisite sex offender risk assessment, which was contrary to his preference. Further, the father contends that, during the time he was incarcerated for a parole/[*2]probation violation, petitioner made little to no effort to assist him in moving off the "waiting list" to access treatment programs authorized to operate within the prisons. To satisfy its duty of diligent efforts, "petitioner must make practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child's progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Carter A. [Courtney QQ.], 121 AD3d 1217, 1218 [3d Dept 2014]; see Matter of Brielle UU. [Brandon UU.], 167 AD3d 1169, 1170-1171 [3d Dept 2018]).
Contrary to the father's contention, the record reveals that the father was advised by petitioner's caseworkers, as well as treatment providers, that he needed to acknowledge his sexual abuse of the child and that his unwillingness to do so impacted his ability to progress with sex offender treatment. The father was successful with inpatient substance abuse services to address his severe alcohol, opiates and cocaine disorders but, upon discharge, relapsed quickly and thereafter refused further services. Additionally, the father continued to deny that he was a "batterer" in need of domestic violence treatment services that petitioner offered to him. We find that the father did not progress in the services arranged for him by petitioner due to his own actions (see Matter of Issac Q. [Kimberly R.], 212 AD3d 1049, 1051 [3d Dept 2023], lv denied 39 NY3d 913 [2023]). Based upon the foregoing, Family Court did not err in determining that petitioner satisfied its threshold burden of establishing that it exercised diligent efforts to encourage and strengthen the father's relationship with the child (see Matter of Jase M. [Holly N.], 190 AD3d 1238, 1240-1241 [3d Dept 2021], lv denied 37 NY3d 901 [2021]; Matter of Dawn M. [Michael M.], 174 AD3d 972, 973-974 [3d Dept 2019], lv denied 34 NY3d 907 [2020]; Matter of Logan C. [John C.], 169 AD3d 1240, 1242-1243 [3d Dept 2019]).
We also conclude that petitioner satisfied its burden of proving by clear and convincing evidence that the father failed to substantially plan for the child's future. " 'To substantially plan, a parent must, at a minimum, take meaningful steps to correct the conditions that led to the child's initial removal. The parent's plan must be realistic and feasible, and his or her good faith effort, alone, is not enough' " (Matter of Jase M. [Holly N.], 190 AD3d at 1241 [brackets omitted], quoting Matter of Brielle UU. [Brandon UU.], 167 AD3d at 1172). "As relevant to whether a parent has so planned, the court may consider the failure of the parent to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent" (Matter of Isabella H. [Richard I.], 174 AD3d 977, 980 [3d Dept 2019] [internal quotation [*3]marks and citations omitted]).
Here, the record supports Family Court's determination that the father failed to meaningfully plan for the child's future for a period of at least one year. The testimony at the hearing evinces that the father continued to use drugs and, in fact, was intoxicated during at least one substance abuse treatment program session during which he had to be escorted away by other attendees. Moreover, he refused to participate in domestic violence counseling, and he failed to complete any of the several sex offender programs offered to him. The hearing record further evinces that, even when the father attended sessions, his engagement was limited as he continued to deny that he had sexually abused the child and refused to acknowledge that he was in need of domestic violence counseling. He also knowingly disregarded workbook assignments he was expected to complete independently as part of treatment. The father also declined to reenter substance abuse treatment, as recommended by petitioner, following relapse with his addictions. It is evident that the father made little to no progress in ameliorating the problems which led to the child's removal, despite petitioner's efforts to work with him. The fact that he occasionally complied with some of petitioner's directives is insufficient as "a parent's ongoing refusal or inability to acknowledge and correct conditions that required the
child[ ]'s removal in the first instance may be deemed to constitute a failure to plan for [his or her] future" (Matter of Asianna NN. [Kansinya OO.], 119 AD3d 1243, 1247 [3d Dept 2014], lv denied 24 NY3d 907 [2014]; see Matter of Lisa Z., 278 AD2d 674, 677 [3d Dept 2000]). Based on the foregoing, and according deference to Family Court's credibility assessments and factual determinations, we find a sound and substantial basis in the record supporting the court's determination that the father permanently neglected the child (see Matter of Samuel DD. [Margaret DD.], 123 AD3d 1159, 1162 [3d Dept 2014], lv denied 24 NY3d 918 [2015]; Matter of Havyn PP. [Morianna RR.], 94 AD3d 1359, 1361-1362 [3d Dept 2012]; Matter of Angelina BB. [Miguel BB.], 90 AD3d 1196, 1197-1198 [3d Dept 2011]; Matter of Sharon V. v Melanie T., 85 AD3d 1353, 1355 [3d Dept 2011]).
Lastly, we conclude that Family Court did not err in terminating the father's parental rights rather than imposing a suspended judgment. The disposition following a determination of permanent neglect must be based solely on the best interests of the child, with no presumption that a return to the parent promotes those interests (see Family Ct Act § 631; Matter of James X., 37 AD3d 1003, 1007 [3d Dept 2007]; Matter of Arianna OO., 29 AD3d 1117, 1117-1118 [3d Dept 2006]). Here, granting deference to Family Court's choice from among the dispositional alternatives, we find no basis to disturb the court's finding that the child's interests would be served by terminating the father's parental rights (see Matter [*4]of Joshua BB., 27 AD3d 867, 869 [3d Dept 2006]). The father had ample time and opportunities to address the problems which led to the child's removal. Notably, the father was reincarcerated and had no resources and no plan for the child. The father demonstrated no insight into the effect of his actions upon the child with whom he last had contact in 2017, and the order of protection remained in full force and effect barring such contact until 2029. Meanwhile, the child was improving in a foster/pre-adoptive home where he had stability and had overcome significant behavioral challenges (see Matter of Jayde M., 36 AD3d 1168, 1169-1170 [3d Dept 2007], lv denied 8 NY3d 809 [2007]; Matter of Raena O., 31 AD3d 946, 948 [3d Dept 2006]). Thus, suspending judgment was not in the child's best interests. Accordingly, termination of the father's parental rights and freeing the child for adoption was appropriate.
Egan Jr., J.P., Pritzker, Fisher and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.