Matter of Chloe B. (Sareena B.) (2020 NY Slip Op 08139)





Matter of Chloe B. (Sareena B.)


2020 NY Slip Op 08139


Decided on December 31, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 31, 2020

529526

[*1]In the Matter of Chloe B. and Another, Alleged to be Permanently Neglected Children. Broome County Department of Social Services, Respondent; Sareena B., Appellant.

Calendar Date: November 19, 2020

Before: Garry, P.J., Egan Jr., Aarons and Pritzker, JJ.


Matthew C. Hug, Albany, for appellant.
Broome County Department of Social Services, Binghamton (Reinaldo B. Valenzuela of counsel), for respondent.
Larisa Obolensky, Delhi, attorney for the children.



Egan Jr., J.
Appeals from three orders of the Family Court of Broome County (Connerton, J.), entered March 15, 2019, May 28, 2019 and June 13, 2019, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondent's parental rights.
Respondent is the mother of, as relevant here, two children (born in 2011 and 2015). In August 2016, the children were removed from respondent's home on an emergency basis and placed into the care and custody of petitioner after she left the children home alone without adult supervision. Petitioner thereafter commenced a neglect proceeding against respondent, and the children were adjudicated to be neglected based upon the mother's untreated mental health issues and a demonstrated lack of understanding of her parental role. As a result, Family Court ordered the children to remain in the care and custody of petitioner, and respondent was directed to, among other things, cooperate with petitioner, its caseworkers and service providers, obtain a psychological evaluation, abide by all recommendations for counseling and engage in anger management and parenting classes.
In February 2018, petitioner commenced this proceeding seeking to adjudicate the children to be permanently neglected and to terminate respondent's parental rights. Following a fact-finding hearing, Family Court issued orders in March 2019 and May 2019, respectively, determining the children to have been permanently neglected and, after a dispositional hearing, issued a June 2019 order terminating respondent's parental rights. Respondent appeals.[FN1]
We affirm. "Where, as here, petitioner seeks to terminate parental rights on the basis of permanent neglect, it must first establish, by clear and convincing evidence, that it has made diligent efforts to encourage and strengthen the parent's relationship with the children" (Matter of Arianna K. [Maximus L.], 184 AD3d 967, 968 [2020] [internal quotation marks and citations omitted]; see Social Services Law § 384-b [7] [a], [f]; Matter of Jace N. [Jessica N.], 168 AD3d 1236, 1237 [2019], lv denied 32 NY3d 918 [2019]). "This requires that the agency make practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child[ren]'s progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Isabella H. [Richard I.], 174 AD3d 977, 978 [2019] [internal quotation marks and citations omitted]; see Matter of Dawn M. [Michael M.], 174 AD3d 972, 972-973 [2019], lv denied 34 NY3d 907 [2020]).
At the fact-finding hearing, petitioner's caseworker testified that she began working with respondent and the children in July 2016 — prior to the children being removed from the home — and continued working [*2]with respondent following the children's August 2016 removal through to the date of the fact-finding hearing. According to both the caseworker and respondent's service plan review, the most concerning barriers to reunification were respondent's mental health and anger management issues and respondent setting realistic expectations for the children's development. To that end, the caseworker provided respondent with referrals for mental health counseling, anger management classes, parenting classes and substance abuse treatment and facilitated visitation between the mother and the children. Petitioner was also referred to the Lourdes Impact Program, which monitored visitation and provided relevant feedback and parenting skills to help facilitate a stronger relationship between respondent and the children. The caseworker testified that she regularly discussed the need for respondent to meaningfully engage and participate with these services and routinely provided her with bus passes to facilitate transportation thereto. Respondent was also notified of and invited to participate in service plan reviews and, to the extent that respondent was willing to provide releases, the caseworker monitored respondent's compliance with programming by communicating with the various case planners and service providers. Accordingly, Family Court's determination that petitioner made diligent efforts to encourage and strengthen respondent's relationship with the children is amply supported in the record (see Matter of Dawn M. [Michael M.], 174 AD3d at 973-974; Matter of Logan C. [John C.], 169 AD3d 1240, 1242-1243 [2019]; Matter of Keadden W. [Hope Y.], 165 AD3d 1506, 1507-1508 [2018], lv denied 32 NY3d 914 [2019]).
Petitioner also established that respondent failed to substantially plan for the children's future by taking meaningful steps to correct the conditions that led to their removal (see Social Services Law § 384—b [7] [c]; Matter of Nathaniel T., 67 NY2d 838, 841-842 [1986]). "A parent plans for the future by utilizing available medical, social and psychological services as needed and providing a stable and adequate home environment" (Matter of Cory N. [Jessica O.], 111 AD3d 1079, 1081 [2013] [internal quotation marks and citations omitted]). Although respondent contends that she completed an anger management program and successfully participated in parenting classes, she refused to sign the necessary releases to allow her caseworker to verify same and ultimately acknowledged that she did not benefit from the anger management programming that she did purportedly complete. She was regularly uncooperative and unnecessarily aggressive with her caseworker, case planners and other service providers, often exhibiting erratic behavior and mood swings in her interactions with petitioner, including, on one occasion, being arrested at petitioner's offices after she threatened to kill one of petitioner's security personnel. Although respondent acknowledged that [*3]she has struggled with mental health issues since she was an adolescent and admitted having an addiction to marihuana, she failed to complete a course of mental health counseling or substance abuse treatment.
Respondent was also "regularly inconsistent" in exercising her visitation with the children, frequently missed visitations and, at one point, moved to New Jersey for a period of approximately six months without having made any plans as to how she would comply with court-ordered programming or otherwise continue to exercise her weekly visitation with the children. Upon her return to New York in December 2017, the mother was briefly homeless before being arrested and ultimately obtained housing with petitioner's help. Despite nearly three years and petitioner's diligent efforts, respondent has not demonstrated any insight into the problems that led to the children's removal in the first instance. She failed to consistently engage with the resources available to address her underlying mental health and substance abuse issues and failed to sufficiently progress in her treatment or create a stable home environment for the children to be safely returned to her care, demonstrating a consistent failure to plan for the children's future (see Matter of Isabella H. [Richard I.], 174 AD3d at 981; Matter of Cory N. [Jessica O.], 111 AD3d at 1081-1082; Matter of Nicholas R. [Jason S.], 82 AD3d 1526, 1528 [2011], lvs denied 17 NY3d 706 [2011]).
We also find that Family Court appropriately terminated respondent's parental rights, rather than issuing a suspended judgment. "The purpose of a suspended judgment is to provide a parent who has been found to have permanently neglected his or her children with a brief grace period within which to become a fit parent with whom the children can be safely reunited" (Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1006 [2017] [internal quotation marks, brackets and citations omitted]; see Family Ct Act § 633). The children have spent a substantial amount of time in foster care and have lived within the same foster home since their removal in August 2016. The foster parent has expressed a willingness to adopt both children and the caseworker testified that the children have bonded with her and call her "mom," and she provides the children with the best resource for a permanent placement together. Respondent, on the other hand, has not demonstrated any appreciable progress in addressing her mental health issues or otherwise developing the skills and stability necessary for the children to return to her care. Accordingly, we discern no abuse of discretion in Family Court's decision not to impose a suspended judgment and, on the record before us, find that Family Court's determination to terminate respondent's parental rights was supported by a sound and substantial basis in the record (see Matter of Jahvani Z. [Thomas V.—Mariah Z.], 168 AD3d 1146, 1151 [2019], lv denied 33 NY3d 902 [2019]; Matter of Logan C[*4]. [John C.], 169 AD3d at 1245-1246; Matter of Zyrrius Q. [Nicole S.], 161 AD3d 1233, 1235 [2018], lv denied 32 NY3d 903 [2018]).
Garry, P.J., Aarons and Pritzker, JJ., concur.
ORDERED that the appeals from the orders entered March 15, 2019 and May 28, 2019 are dismissed, without costs.
ORDERED that the order entered June 13, 2019 is affirmed, without costs.



Footnotes

Footnote 1: Respondent's appeals from the fact-finding orders entered March 15, 2019 and May 28, 2019 must be dismissed as no appeal lies as of right from nondispositional orders in a permanent neglect proceeding (see Matter of Isabella H. [Richard I.], 174 AD3d 977, 978 n 2 [2019]). Nevertheless, respondent's appeal from the dispositional order brings up for review those issues raised with respect to these fact-finding orders (see Matter of Keadden W. [Hope Y.], 165 AD3d 1506, 1507 [2018], lv denied 32 NY3d 914 [2019]).