Matter of Harmony F. (William F.) (2023 NY Slip Op 00259)

Matter of Harmony F. (William F.)

2023 NY Slip Op 00259

Decided on January 19, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 19, 2023

535375
[*1]In the Matter of Harmony F., Alleged to be a Permanently Neglected Child. Chenango County Department of Social Services, Respondent; William F., Appellant.

Calendar Date:December 14, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Fisher and McShan, JJ.

Lindsay H. Kaplan, Kingston, for appellant.
Zachary Wentworth, County Attorney, Norwich (Jennifer E. Mason of counsel), for respondent.
Lisa K. Miller, McGraw, attorney for the child.

McShan, J.
Appeal from an order of the Family Court of Chenango County (Frank B. Revoir Jr., J.), entered April 1, 2022, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent's parental rights.
Respondent is the father of the subject child (born in 2018), who was placed in petitioner's care in January 2019 following respondent's arrest for violating an order of protection in favor of the mother and the child.[FN1] The child has been in the continuous care, custody and guardianship of petitioner since that time. Petitioner thereafter commenced a neglect proceeding against respondent, alleging, among other things, that he had been regularly intoxicated while responsible for the care of the child. In August 2019, following a fact-finding and dispositional hearing, Family Court adjudicated the child to be neglected by respondent. In December 2021, petitioner filed this proceeding alleging that respondent had permanently neglected the child and seeking to terminate his parental rights. In March 2022, Family Court held a fact-finding hearing on the petition. The court took judicial notice of the prior findings from six permanency hearings held over the course of the approximately three years that the child had been in petitioner's custody, including the permanency reports submitted by petitioner, and heard testimony from petitioner's caseworker, respondent and the foster mother. At the conclusion of the hearing, Family Court adjudicated the child to have been permanently neglected by respondent.[FN2] Further, upon its determination that a separate dispositional hearing was unnecessary, Family Court terminated respondent's parental rights and freed the child for adoption. Family Court issued an order to that effect in April 2022, and respondent appeals.
A permanently neglected child is "a child who is in the care of an authorized agency and whose parent . . . has failed for a period of either at least one year or [15] out of the most recent [22] months following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child" (Social Services Law § 384-b [7] [a]; see Matter of Leon YY. [Christopher ZZ.], 206 AD3d 1093, 1094 [3d Dept 2022]; Matter of Jase M. [Holly N.], 190 AD3d 1238, 1240 [3d Dept 2021], lvs denied 37 NY3d 901 [2021]). Thus, where petitioner seeks to terminate parental rights on the basis of permanent neglect, it "must prove, by clear and convincing evidence, that it had made practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship [*2]by such means as assisting the parent with visitation, providing information on the child's progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Zaiden P. [Ashley Q.], ___ AD3d ___, ___, 2022 NY Slip Op 07268, *3 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Chloe B. [Sareena B.], 189 AD3d 2011, 2012 [3d Dept 2020]; Matter of Arianna K. [Maximus L.], 184 AD3d 967, 969 [3d Dept 2020]).
Respondent contends that Family Court improperly allowed petitioner to meet its burden by relying on the permanency orders and reports. We disagree. The record contains sufficient evidence, including respondent's own testimony and the testimony of petitioner's caseworker, concerning the services provided by petitioner following the child's removal, and Family Court could properly consider the reports as part of its determination as to petitioner's diligent efforts (see Matter of Walter DD. [Walter TT.], 152 AD3d 896, 897-898 [3d Dept 2017], lv denied 30 NY3d 905 [2017]; see also Matter of Anthony S., 282 AD2d 778, 779 [3d Dept 2001]).
In this respect, the record bears out that the child was removed from respondent's care based upon his violation of an order of protection that stemmed from a family offense petition filed by the mother in December 2018, wherein the mother alleged that respondent had consumed alcohol and made threats to take the child from her. The mother further alleged that respondent would drink to the point of intoxication and would then make threatening statements and throw objects at her in the presence of the child. Further, respondent has a prior neglect finding from 2017 based upon an incident involving his use of physical violence against the mother's other child. The various permanency hearing reports prepared by petitioner identified the barriers to reunification as respondent's prior neglect adjudication and his failure to place the child's needs above his, respondent's severe alcoholism, respondent's inadequate housing and means of income and respondent's past domestic violence.
Petitioner's caseworker, who was the fourth such caseworker assigned to respondent's matter, testified to the various services provided to respondent to address the aforementioned concerns, consistent with the information provided in the various permanency reports. Specifically, the caseworker testified that respondent had been provided with parent aide services since the child entered foster care, which entailed education on how to provide for the child's nutritional, dental and medical needs and instructed him on how to handle the child's behaviors, properly secure the child into a car seat and to change diapers. The records reflect that petitioner's caseworkers had consistent contact with respondent during the child's placement and encouraged and instructed him regarding what he needed to do to reunite with the child. The caseworkers also encouraged [*3]respondent to abide by court orders, offered referrals to different programs and assisted with applications for public benefits and to obtain employment. As to his substance abuse, respondent was offered numerous services, including inpatient and outpatient rehabilitation, as well as counseling services.
The record also established that, at the time of the hearing, respondent had been incarcerated since March 2021 following a conviction for contempt, having violated, for the third time, an order of protection in favor of the mother.[FN3] To this end, the caseworker noted that, since taking over this matter, she had met with respondent on a monthly basis while he was incarcerated and he was provided with counseling, encouraged to participate in services and instructed on how to care for the child once released. It is further established from the record that regular calls were facilitated between the child and respondent, and respondent would regularly write letters and draw pictures which were provided to the child (see Matter of Brielle UU. [Brandon UU.], 167 AD3d 1169, 1171 [3d Dept 2018]; Matter of James J. [James K.], 97 AD3d 936, 938 [3d Dept 2012]). Although the child had not visited respondent while he was incarcerated, respondent had expressed to the foster mother that he did not want the child to visit and see him in that manner. Altogether, we find that the proof submitted at the hearing sufficiently established that petitioner met its threshold burden to demonstrate, "by clear and convincing evidence, that it made diligent efforts to ameliorate the concerns that led to the child's removal and to strengthen the parent-child relationship" (Matter of Jason O. [Stephanie O.], 188 AD3d 1463, 1466 [3d Dept 2020], lv denied 36 NY3d 908 [2021]; see Matter of Walter DD. [Walter TT.], 152 AD3d at 897-898).
We further conclude that petitioner clearly and convincingly established that respondent "failed to substantially plan for the child[ ]'s future by taking meaningful steps to correct the conditions that led to [the child's] removal" (Matter of Chloe B. [Sareena B.], 189 AD3d at 2013; see Social Services Law § 384-b [7] [c]). "To substantially plan, a parent must, at a minimum, take meaningful steps to correct the conditions that led to the child's initial removal. The parent's plan must be realistic and feasible, and his or her good faith effort, alone, is not enough" (Matter of Jase M. [Holly N.], 190 AD3d at 1241 [internal quotation marks, brackets and citations omitted]; accord Matter of Makayla I. [Sheena K.], 201 AD3d 1145, 1148 [3d Dept 2022], lvs denied 38 NY3d 903 [2022]). "As relevant to whether a parent has so planned, the court may consider the failure of the parent to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent" (Matter of Makayla I. [Sheena K.], 201 AD3d at 1148 [internal quotation marks and citations omitted]; see Matter of Kapreece SS[*4]. [Latasha SS.], 128 AD3d 1114, 1115 [3d Dept 2015], lv denied 26 NY3d 903 [2015]).
The record reflects that respondent has continued to struggle with alcoholism since the child's removal. Although respondent had intermittently attempted to complete inpatient and outpatient alcohol treatment, he had frequently failed to follow up and was otherwise noncompliant with requests to submit to alcohol testing.[FN4] Moreover, respondent conceded that, despite being fully aware that his sobriety would be a requirement for reunification, he continued to consume alcohol after the child had been removed. Although respondent initially challenged any characterization that he was an alcoholic, he eventually conceded that fact to Family Court and acknowledged that he had not met the various substance abuse conditions in the court's 2019 neglect order, noting that he had tested positive for alcohol, been removed or unsuccessfully discharged from several treatment providers and had recently been arrested for driving while intoxicated.
The caseworker also noted that respondent did not have a definitive plan for housing upon his release from incarceration, as he had suggested that he might either move to Florida or would move back into a friend's home that he had lived in prior to his incarceration. Respondent testified that his plan was to move back to his friend's residence and suggested that, if the child were returned to him, he would be able to build a wall and create a separate room for the child in the home. However, the caseworker testified that on prior visits to the friend's home, that housing arrangement had been found unsuitable, as there were periods when the house had no heat and hot water, and that respondent's friend frequently kept alcohol on the premises. To this end, respondent had previously acknowledged that he would have to find a more suitable housing arrangement for the child in order to be reunified, and he had failed to do so. As to his employment, respondent testified that he had not been employed since 2018 and had performed "odd jobs" for income prior to his incarceration. Respondent suggested that he planned on seeking employment when released and intended on applying for Social Security disability, although he was unable to substantiate whether he was eligible for those benefits. Altogether, we find that petitioner clearly and convincingly established that respondent had not sufficiently planned for the child's future and had taken insufficient steps to correct the conditions that led to the child's removal and, accordingly, that Family Court properly adjudicated the child as permanently neglected by the father (see Matter of Jase M. [Holly NN.], 190 AD3d at 1241; Matter of Arianna K. [Maximus L.], 184 AD3d at 970-971; Matter of Ronaldo D. [Jose C.], 177 AD3d 1217, 1219-1220 [3d Dept 2019], lv denied 35 NY3d 906 [2020]).
However, we agree with respondent that Family Court improperly dispensed with the dispositional hearing under the circumstances [*5]presented. Both petitioner and the attorney for the child share the position that Family Court properly dispensed of the matter without a separate dispositional hearing and, alternatively, that there is sufficient evidence in the record for this Court to render a disposition. However, Family Ct Act § 625 (a) expressly provides that, "[u]pon completion of [a] fact-finding hearing, [a] dispositional hearing may commence immediately after the required findings are made; provided, however, that if all parties consent the court may, upon motion of any party or upon its own motion, dispense with the dispositional hearing and make an order of disposition on the basis of competent evidence admitted at the fact-finding hearing" (emphasis added). Here, the court stated that there was "no need for a further or separate dispositional hearing" before rendering its determination that respondent had permanently neglected the child and terminating his parental rights. However, there is no indication that respondent affirmatively consented to dispense with the hearing and, "absent consent, the requirement of a dispositional hearing may not be circumvented" (Matter of Verquan B., 225 AD2d 1062, 1062 [4th Dept 1996]; see Matter of Jarrett P. [Jeremy P.], 173 AD3d 1692, 1695 [4th Dept 2019], lv denied 34 NY3d 902 [2019]; Matter of Shavonda GG., 232 AD2d 780, 782 [3d Dept 1996]; see also Matter of Anthony OO., 258 AD2d 788, 789 [3d Dept 1999]). Accordingly, even though the record provides adequate support for Family Court's disposition, we must remit the matter for the court to conduct a dispositional hearing or to otherwise affirmatively gain the parties' consent to dispense of the matter without one.
To the extent that respondent's remaining contentions are not addressed herein, we have considered them and found them to be unavailing.
Egan Jr., J.P., Clark, Pritzker and Fisher, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as terminated respondent's parental rights; matter remitted to the Family Court of Chenango County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: The mother consented to the child's placement three days after respondent's arrest. She later consented to a finding of neglect in April 2019 and eventually consented to a conditional termination of her parental rights on the same day that respondent's fact-finding hearing commenced.

Footnote 2: The attorney for the child supported petitioner's position that the child had been permanently neglected by respondent and maintains that position on appeal.

Footnote 3: The permanency reports reflect that respondent had been incarcerated for several periods during the child's placement.

Footnote 4: By his own admission, respondent was currently incarcerated based in part upon a conviction for misdemeanor driving while intoxicated stemming from an incident when he crashed his motorcycle.