Matter of Ryan J. (Taylor J.) (2023 NY Slip Op 06567)

Matter of Ryan J. (Taylor J.)

2023 NY Slip Op 06567

Decided on December 21, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 21, 2023

533881 535142
[*1]In the Matter of Ryan J., a Neglected Child. Essex County Department of Social Services, Respondent; Taylor J., Appellant. (Proceeding No. 1.)
In the Matter of Ryan J., Alleged to be a Permanently Neglected Child. Essex County Department of Social Services, Respondent; Taylor J., Appellant. (Proceeding No. 2.)

Calendar Date:November 17, 2023

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Lisa A. Burgess, Indian Lake, for appellant.
Essex County Department of Social Services, Elizabethtown (Marc A. Duclos of counsel), for Essex County Department of Social Services, respondent.
Noreen McCarthy, Keene Valley, for Joshua K., respondent.
James P. Curran, Salem, attorney for the child.

Egan Jr., J.
Appeals (1) from an order of the Family Court of Essex County (Richard B. Meyer, J.), entered July 23, 2021, which, in proceeding No. 1 pursuant to Family Ct Act articles 10 and 10-A, continued the placement of the subject child, and (2) from an order of said court, entered March 24, 2022, which granted petitioner's application, in proceeding No. 2 pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent's parental rights.
Respondent (hereinafter the mother) is the mother of a child (born in 2018). The mother has an extensive substance abuse history, and both she and the child tested positive for cocaine at the time of his birth in March 2018. Petitioner commenced a neglect proceeding against the mother and, after the mother was discharged from a substance abuse treatment program and repeatedly tested positive for cocaine, the child was removed from her custody in July 2018 and placed in the care of his maternal great uncle and great aunt. The mother was found to have neglected the child in August 2018 and, in September 2018, Family Court determined that the child should remain in petitioner's custody. An order of filiation was subsequently entered against nonparty Joshua K. (hereinafter the father), but an investigation reflected that he was not an appropriate placement. The child accordingly stayed in the care of his great uncle and great aunt, where he has remained to date.
After concerns arose about both the mother's continued substance abuse and her parental judgment, she was restricted to supervised visitation with the child in December 2019, and the permanency goal was changed from return to parent to freeing the child for adoption in June 2020. Petitioner commenced proceeding No. 2 alleging permanent neglect in September 2020, then filed an amended petition in February 2021. Family Court conducted a combined permanency hearing and fact-finding hearing on the permanent neglect petition and, prior to issuing an order of fact-finding, issued a permanency hearing order in July 2021 that continued the goal of freeing the child for adoption. Family Court then issued an order, entered in December 2021, in which it determined that the child was permanently neglected. Following a dispositional hearing, Family Court issued an order in March 2022 that rejected the mother's request for a suspended judgment and terminated her parental rights. The mother appeals, in relevant part, from the March 2022 dispositional order.[FN1]
We affirm. "A permanently neglected child is 'a child who is in the care of an authorized agency and whose parent . . . has failed for a period of either at least one year or [15] out of the most recent [22] months following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the [*2]agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child' " (Matter of Harmony F. [William F.], 212 AD3d 1028, 1029 [3d Dept 2023] [citations omitted], quoting Social Services Law § 384-b [7] [a]; accord Matter of Desirea F. [Angela H.], 217 AD3d 1064, 1065-1066 [3d Dept 2023], lv denied ___ NY3d ___ [Dec. 14, 2023]). In assessing whether petitioner has demonstrated permanent neglect, we accord great weight to the factual findings and credibility determinations of Family Court, and its findings will not be disturbed unless they lack a sound and substantial basis in the record (see Matter of Joshua R. [Kimberly R.], 216 AD3d 1219, 1220 [3d Dept 2023], lv denied 40 NY3d 905 [2023]; Matter of Issac Q. [Kimberly R.], 212 AD3d 1049, 1053 [3d Dept 2023], lv denied 39 NY3d 913 [2023]).
With regard to whether petitioner made "diligent efforts to encourage and strengthen the relationship between [the mother] and the child" (Matter of Carter A. [Courtney QQ.], 121 AD3d 1217, 1217-1218 [3d Dept 2014]; see Matter of Neveah N. [Heidi O.], 220 AD3d 1070, 1070 [3d Dept 2023]), the testimony at the fact-finding hearing reflected that petitioner ensured that the mother was engaging in court-ordered mental health and substance abuse treatment, including by consulting with her treatment providers regarding her progress and coordinating some of her drug testing. The proof also reflected that petitioner arranged for visitation between the child and the mother through an outside agency — and later facilitated virtual visits with the child during the period that COVID-19 restrictions prevented in-person visits — and made sure that the mother was invited to the child's health care appointments and service plan reviews. Petitioner additionally came forward with evidence that it assisted the mother with transportation to and from various appointments and her visitation with the child, helped her to receive temporary housing assistance after she became homeless, and offered her resources to find permanent housing. We are satisfied that the foregoing constitutes clear and convincing evidence of diligent efforts (see Matter of Nevaeh N. [Heidi O.], 220 AD3d at 1070-1071; Matter of Dawn M. [Michael M.], 174 AD3d 972, 973-974 [3d Dept 2019], lv denied 34 NY3d 907 [2020]).
The question accordingly turns to whether the proof showed that the mother "failed to substantially plan for the child's future" for the requisite period (Matter of Issac Q. [Kimberly R.], 212 AD3d at 1051 [internal quotation marks, brackets and citations omitted]; see Social Services Law § 384-b [7] [a]), meaning a failure "to take such steps as may be necessary to provide an adequate, stable home and parental care for the child" (Social Services Law § 384-b [7] [c]; accord Matter of Issac Q. [Kimberly R.], 212 AD3d at 1051). The evidence here reflected that, after a prolonged series of struggles, the mother [*3]did successfully complete a substance abuse treatment program in July 2019. That said, the owner of the property where the mother had been living found, among other things, "a whole bunch of syringes," crack pipes and a baggie containing a white powdery substance in the mother's apartment shortly after the mother moved out in December 2019, and the owner turned those items over to law enforcement.[FN2] A sheriff's deputy further testified to an encounter he had with the mother at her workplace in June 2020 when she had a visible head injury and appeared to be under the influence and, notably, the proof showed that the mother tested positive for cocaine three days after that encounter. Later that month, the mother was arrested after crack cocaine was found in a vehicle in which she was a passenger during a traffic stop. Thereafter, the mother reengaged with substance abuse treatment in September 2020, although that treatment program involved virtual attendance and did not involve drug testing. Her struggles with drugs were apparently continuing, however, as a family specialist at the outside agency where the mother had visits with the child testified to seeing needle marks on the mother's hand in March 2021.[FN3]
In short, even accepting that the mother was making progress toward sobriety around the time that she successfully completed substance abuse treatment in July 2019, the foregoing proof reflected that she resumed using illegal drugs soon afterwards and continued to use them throughout 2020 and into 2021. The evidence also reflected that, after petitioner was alerted to the December 2019 incident and notified the mother that her visits with the child were going to be supervised for the time being, her already poor relationship with caseworkers and other service providers became even more hostile and her engagement with the child withered. For example, the proof showed that the mother refused multiple offers of visitation with the child between December 2019 and March 2020 because petitioner's caseworker would not agree to her demands that the visits be unsupervised or supervised by unsuitable individuals.[FN4] The mother thereafter had spotty virtual visits with the child when the COVID-19 pandemic prevented in-person visits beginning in March 2020 and, after in-person visits resumed in June 2020, she only attended approximately half of the scheduled visits. The proof further reflected that the mother did not answer the door and let petitioner's caseworker into her home for home visits during the winter and spring of 2021 — notwithstanding the caseworker's observations that people appeared to be there — and that the mother refused to contact the caseworker to discuss home visits, the need for drug testing after she was observed with needle marks in March 2021 or, for that matter, anything else, despite repeated letters and phone calls during that period.
The mother, to be sure, produced evidence that she was doing well in her mental health treatment and [*4]disputed much of petitioner's proof in her testimony, claiming that petitioners' witnesses were lying about her and eventually stating her belief that petitioner and its witnesses were engaged in a conspiracy against her because they were "getting money [for the child] to be in the system." Family Court nevertheless credited the testimony of petitioner's witnesses and, according deference to that assessment, we are satisfied that petitioner provided clear and convincing proof that the mother had failed to substantially plan for the child's future (see Matter of Chloe B. [Sareena B.], 189 AD3d 2011, 2013-2014 [3d Dept 2020]; Matter of Brielle UU. [Brandon UU.], 167 AD3d 1169, 1172-1173 [3d Dept 2018]; Matter of Angelo AA. [Tashina DD.], 123 AD3d 1247, 1249 [3d Dept 2014]).
Finally, we do not agree with the mother that Family Court should have issued a suspended judgment instead of terminating the mother's parental rights. "[T]he sole concern at a dispositional hearing is the best interests of the child and there is no presumption that any particular disposition, including the return of a child to a parent, promotes such interests" (Matter of Isabella M. [Kristine N.], 168 AD3d 1234, 1235 [3d Dept 2019] [internal quotation marks and citations omitted]). The child has lived in foster care since he was three months old and has been well cared for by, and developed a loving relationship with, his maternal great uncle, great aunt and others in his foster family. Meanwhile, the mother's continued lack of cooperation with petitioner's caseworkers and other service providers gave no reason to believe that the circumstances that led to the child's removal from her care would be corrected. Thus, in the absence of any "indication that a brief grace period would lead to the necessary improved parenting and a safe reunification or that it would be in the child's best interests," a sound and substantial basis exists in the record for Family Court's finding that termination of the mother's parental rights, rather than a suspended judgment, was in the best interests of the child (Matter of Isabella H. [Richard I.], 174 AD3d 977, 982 [3d Dept 2019] [internal quotation marks, ellipses, brackets and citation omitted]; see Matter of Brielle UU. [Brandon UU.], 167 AD3d at 1174).
Garry, P.J., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the appeal from the order entered July 23, 2021 is dismissed, as moot, without costs.
ORDERED that the order entered March 24, 2022 is affirmed, without costs.

Footnotes

Footnote 1: The mother and the father also appealed from the July 2021 permanency order. The father withdrew his appeal from the July 2021 order (Matter of Ryan J. [Taylor J.-Joshua K.], 2022 NY Slip Op 69240[U] [3d Dept 2022]). To the extent that the mother continues to pursue her appeal from that order, it has been rendered moot by the termination of her parental rights (see Matter of Noelia F. [Noel G.], 204 AD3d 1122, 1123 [3d Dept 2022]).

Footnote 2: Although the mother underwent urine screenings in December 2019 and February 2020 and tested negative, there is no indication that those tests were observed, and the record reflects that the mother had previously been found with items used to beat drug tests and that a container holding what looked and smelled like urine was found in her residence in 2018. Petitioner's caseworker who was handling the mother's case during that period acknowledged in her testimony, in fact, that she should have requested that the mother undergo a hair follicle test.

Footnote 3: The mother points out, with the support of the father, that where a parent "is voluntarily and regularly participating in a rehabilitative program," his or her drug use does not establish neglect in a Family Ct Act article 10 proceeding absent proof "that the child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired" (Family Ct Act § 1012 [f] [i] [B]; see Family Ct Act § 1046 [a] [iii]; Matter of Keira O., 44 AD3d 668, 670 [2d Dept 2007]). The mother has already been found to have neglected the child in a Family Ct Act article 10 proceeding, which resulted in the child's removal from her care; the question is therefore whether she has "failed to substantially plan for the child's future by taking meaningful steps to correct the conditions that led to the child's removal," and the degree to which she has addressed her longstanding substance abuse problem is key to answering that question (Matter of Harmony F. [William F.], 212 AD3d at 1031 [internal quotation marks, brackets and citation omitted]).

Footnote 4: Although the timeline is unclear, petitioner also presented evidence reflecting that the mother intermittently attended service plan reviews involving the child and only rarely attended his medical appointments despite being advised of such and having transportation made available to her.