Matter of Carmela D. (Shameeka G.) (2024 NY Slip Op 05916)

Matter of Carmela D. (Shameeka G.)

2024 NY Slip Op 05916

Decided on November 27, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 27, 2024

535849
[*1]In the Matter of Carmela D. and Another, Alleged to be Permanently Neglected Children. Schenectady County Department of Social Services, Respondent; Shameeka G., Appellant. (Proceeding No. 1.)
In the Matter of Carmela D., Alleged to be a Permanently Neglected Child. Schenectady County Department of Social Services, Respondent; Tristen F., Appellant. (Proceeding No. 2.)

Calendar Date:October 17, 2024

Before:Garry, P.J., Egan Jr., Aarons, Lynch and Ceresia, JJ.

Michelle I. Rosien, Philmont, for Shameeka G., appellant in proceeding No. 1.
Ellen Bennett Becker, Albany, for Tristen F., appellant in proceeding No. 2.
Christopher H. Gardner, County Attorney, Schenectady (Jennifer M. Barnes of counsel), for respondent.
Mitchell S. Kessler, Cohoes, attorney for the children.

Ceresia, J.
Appeal from an order of the Family Court of Schenectady County (Mark W. Blanchfield, J.), entered July 5, 2022, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondents' parental rights.

Respondent Shameeka G. (hereinafter the mother) is the mother of the subject children (born in 2007 and 2017) and respondent Tristen F. (hereinafter the father) is the father of the older child.[FN1] Petitioner filed a neglect petition against the mother and removed both of the children from her care on an emergency basis in June 2019 after they were found unattended in the mother's home, which was in a deplorable condition.[FN2] In July 2019, Family Court issued an order directing the mother to abide by a number of conditions under petitioner's supervision, including participating in mental health treatment and completing a parenting class. Family Court subsequently, in August 2019, adjudicated the children neglected and placed them in petitioner's custody. They have remained in foster care ever since.
For several months, petitioner and the mother conducted settlement discussions concerning the issues that had been raised in the neglect petition, which ultimately proved unsuccessful. In November 2020, petitioner commenced the first of these permanent neglect proceedings against the mother, seeking to terminate her parental rights to the children, and in February 2021, petitioner commenced the second of these proceedings against the father, for the purpose of terminating his parental rights as to the older child. Following separate fact-finding hearings, Family Court determined that petitioner had demonstrated that it engaged in diligent efforts to reunify the children with respondents, but that they failed to properly plan for the children's future, thus establishing permanent neglect. After a combined dispositional hearing, the court terminated respondents' parental rights. Respondents appeal, and we affirm.
Turning first to Family Court's adjudications of permanent neglect, as relevant here, a permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for a period of 15 of the most recent 22 months, to "substantially and continuously or repeatedly . . . plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Social Services Law § 384-b [7] [a]). Thus, in a permanent neglect proceeding, the petitioner bears the burden of proving by clear and convincing evidence, first, that it made such diligent efforts, and, second, that the respondent failed to plan for the child's future (see Matter of Nevaeh N. [Heidi O.], 220 AD3d 1070, 1070-1071 [3d Dept 2023], lv denied 41 NY3d 903 [2024]).
Diligent efforts on the part of the agency entail "develop[ing] a plan that is [*2]realistic and tailored to fit the respondent's individual situation" (Matter of Willow K. [Victoria L.], 218 AD3d 851, 852 [3d Dept 2023] [internal quotation marks, brackets and citation omitted]; see Matter of Austin A., 243 AD2d 895, 896-897 [3d Dept 1997]). Notably, diligent efforts will be found where "appropriate services are offered but the parent refuses to engage in them or does not progress" (Matter of Desirea F. [Angela H.], 217 AD3d 1064, 1066 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 908 [2023]). As for the parent's obligation to substantially plan for the child's future, this "requires the parent to take meaningful steps to correct the conditions that led to the child's removal" (id. [internal quotation marks and citation omitted]). "In determining whether a parent has planned for the future of the child, the court may consider the failure of the parent to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent" (Social Services Law § 384-b [7] [c]; accord Matter of Issac Q. [Kimberly R.], 212 AD3d 1049, 1051 [3d Dept 2023], lv denied 39 NY3d 913 [2023]).
The evidence at the fact-finding hearing concerning the petition against the mother revealed that, when the children were removed from her care, police officers and petitioner's caseworkers found the children alone in the home, which was in a highly unsanitary condition. The older child did not know where the mother was or how to reach her, while the younger child was found with her diaper and mattress soaked in urine. After the children were removed, petitioner's caseworker provided the mother with a list of mental health providers and sought releases from the mother to ascertain any treatment she had previously obtained for her mental health issues, which the mother admitted included anxiety, depression and posttraumatic stress disorder. The caseworker also offered the mother a referral to parenting classes that were specifically tailored to the ages of the children, as well as housing services, coached visitation with the children, and taxi fares and bus tokens to facilitate these visits.
The mother largely failed to avail herself of these resources. While she claimed that she had secured alternative mental health treatment, records from this treatment revealed that she attended sessions only sporadically, did not disclose to her counselors the circumstances surrounding the children's removal from her care and failed to acknowledge her role in that removal, instead focusing on other topics of her choosing. In interactions with the caseworker, the mother was combative, declined services and refused to share her current address or any details about her employment or finances. While the mother attended a number of supervised visits with the children, she often exhibited erratic and aggressive behavior toward service providers in front of the children, with [*3]the older child flinching and appearing uncomfortable and fearful of the mother on these occasions. Commendably, the mother provided evidence that she had taken parenting classes, but appeared to struggle to put some of the skills she learned, including anger management, into practice during her visits with the children. The mother also caused upheaval in the children's foster care placements, accusing one foster parent of kidnapping the children and falsely alleging that the younger child had been abused.
We find that the hearing evidence furnished a sound and substantial basis for Family Court's ruling that the mother permanently neglected the children, in that petitioner made reasonable, diligent efforts to strengthen the relationship between the mother and the children, the mother either refused the proffered services or failed to make meaningful progress, and the mother did not substantially plan for the children's future (see Matter of Nikole V. [Norman V.], 224 AD3d 1102, 1104-1105 [3d Dept 2024], lv denied 41 NY3d 909 [2024]; Matter of Chloe B. [Sareena B.], 189 AD3d 2011, 2013-2014 [3d Dept 2020]). In that regard, the mother's failure to acknowledge and correct the conditions that led to the removal of the children contributed to her inability to plan for their future (see Matter of Makayla I. [Sheena K.], 201 AD3d 1145, 1149 [3d Dept 2022], lv denied 38 NY3d 903 [2022]). Although the caseworker and the mother provided testimony that at times differed strongly, we defer to Family Court's credibility determinations (see Matter of Issac Q. [Kimberly R.], 212 AD3d at 1053-1054).
With respect to the petition against the father, there was proof at the fact-finding hearing that the older child had never lived with him and, despite having visitation rights, the father had very few interactions with the older child for the first 12 years of her life, at times going years without seeing her at all. After the older child entered foster care, petitioner's caseworker attempted to provide information to the father relative to her special needs and serious allergies, including an allergy to dogs, but the father responded with skepticism and expressed that he had no plans to rehome the two dogs currently living with him. The caseworker also provided the father with supervised calls and visits, but he did not attend the majority of these, often blaming his work schedule yet declining the caseworker's offer to speak to his supervisor. Further, records received in evidence appeared to contradict the father's claims that he worked long and/or irregular hours. When the older child refused telephone contact with the father after a gap of several months, he accused the caseworker of brainwashing the older child. The father characterized the caseworker's attempts to facilitate visits and calls with the older child as demands that he do so, and refused multiple offers of transportation assistance. In addition, the caseworker offered the father case planning meetings[*4], but he did not participate in any meaningful way and instead became belligerent. The father denied that the older child needed him to be a consistent presence in her life because, as he stated, he had a "special understanding" with her.
The caseworker testified that the father exhibited concerning behaviors including paranoia and anger, and struggled with basic comprehension of the details of the case. Although the father suffered a traumatic brain injury as a child, he acknowledged that the only long-term effects were seizures, which he managed through medication. Nevertheless, the caseworker requested a release from the father in order to review a prior mental health evaluation, which the father refused, and also sought to have the father complete another mental health evaluation and any recommended treatment, which he resisted, calling the caseworker racist and denying that he needed such treatment. After the fact-finding hearing commenced, the father obtained what appeared to be a limited mental health evaluation, but there was no evidence that he attended any treatment. Considering the above evidence and again deferring to Family Court's credibility determinations, the court's conclusion that petitioner made diligent efforts toward strengthening the father's bond with the older child, and that the father refused to partake in these efforts and failed to substantially plan for the older child's future, resulting in permanent neglect, finds sufficient support in the record (see Matter of Chloe B. [Sareena B.], 189 AD3d at 2014; Matter of Jason O. [Stephanie O.], 188 AD3d 1463, 1467 [3d Dept 2020]).
As for the disposition rendered by Family Court, "[f]ollowing an adjudication of permanent neglect, the sole concern at a dispositional hearing is the best interests of the child, and there is no presumption that any particular disposition, including the return of a child to a parent, promotes such interests" (Matter of Zaiden P. [Ashley Q.], 211 AD3d 1348, 1355 [3d Dept 2022] [internal quotation marks, brackets and citations omitted], lvs denied 39 NY3d 911 [2023], 39 NY3d 911 [2023]; see Matter of Leon YY. [Christopher ZZ.], 206 AD3d 1093, 1096-1097 [3d Dept 2022]). While the court may decide to issue a suspended judgment rather than terminating parental rights, "[a] suspended judgment is only appropriate where a parent has made significant progress such that a brief grace period would allow him or her to demonstrate the ability to be a fit parent, and such delay is consistent with the child's best interests" (Matter of Asiah S. [Nancy S.], 228 AD3d 1034, 1037 [3d Dept 2024], lv denied ___ NY3d ___ [Nov. 21, 2024]).
By the time of the dispositional hearing, there was evidence that each of the respondents had secured housing and employment. However, they had not made significant progress in utilizing the supports and services offered to them, and the quality of their visits with the children had not improved. According to the caseworker, the older [*5]child became upset at the suggestion of a phone call with the mother, and professed discomfort and anxiety at the thought of speaking with the father, while the younger child refused to speak with the mother. Both children expressed that they wished to remain in their foster care placement and be adopted by their foster parent.[FN3] Under the circumstances presented herein, we conclude that Family Court's determination that the best interests of the children would be served by termination of respondents' parental rights, rather than a suspended judgment, is supported by a sound and substantial basis in the record (see Matter of Drey L. [Katrina M.], 227 AD3d 1134, 1138 [3d Dept 2024]; Matter of Makayla I. [Sheena K.], 201 AD3d at 1152). Respondents' remaining contentions, to the extent not specifically addressed herein, have been considered and determined to be without merit.
Garry, P.J., Egan Jr., Aarons and Lynch, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The younger child's father, whose parental rights have been terminated, is not a party to these proceedings.

Footnote 2: Respondents did not reside together following the birth of the older child.

Footnote 3: According to a subsequent order entered by Family Court during the pendency of this appeal, the children have been freed for adoption by the foster parent.