Matter of Macayla N. (Sheena N.) (2025 NY Slip Op 04061)

Matter of Macayla N. (Sheena N.)

2025 NY Slip Op 04061

Decided on July 3, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 3, 2025

CV-24-0290
[*1]In the Matter of Macayla N. and Another, Alleged to be Permanently Neglected Children. Broome County Department of Social Services, Respondent; Sheena N., Appellant.

Calendar Date:June 4, 2025

Before:Egan Jr., J.P., Reynolds Fitzgerald, Fisher, McShan and Mackey, JJ.

Lisa K. Miller, McGraw, for appellant.
Cheryl D. Sullivan, County Attorney, Binghamton (Brianna Strope Vaughan of counsel), for respondent.
Michelle E. Stone, Vestal, attorney for the children.

McShan, J.
Appeal from an order of the Family Court of Broome County (Veronica Gorman, J.), entered January 18, 2024, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondent's parental rights.
Respondent (hereinafter the mother) is the mother of the two subject children (born in 2012 and 2016). In June 2019, the children were adjudicated neglected by the mother. Pursuant to the resulting dispositional order, the mother was placed under a one-year order of supervision that required her to engage, complete and benefit from various services, including anger management, domestic violence and parenting classes.
In October 2021, petitioner commenced the instant proceeding seeking to adjudicate the children permanently neglected and to terminate the mother's parental rights. Petitioner alleged that despite its efforts to provide the mother with programs, resources and support through visitations to strengthen the parent-child relationship, the mother was uncooperative and hostile toward its attempts and advice. Following a multi-day fact-finding hearing, Family Court found the children to be permanently neglected. At the scheduled dispositional hearing in December 2022, the mother agreed to a conditional judicial surrender of her parental rights with the understanding that the children would be adopted by their current foster parent. Thereafter, the children were removed from the foster parent's care and petitioner moved to vacate the conditional surrender due to the failure of a material condition. The court granted the request, and the matter proceeded to a final dispositional hearing. Following this dispositional hearing, the court terminated the mother's parental rights. The mother appeals.
We affirm. A permanently neglected child is one who has been in the care of an authorized agency and whose parent has failed, for a period of 15 of the most recent 22 months, to "substantially and continuously or repeatedly . . . plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Social Services Law § 384-b [7] [a]). "Diligent efforts means reasonable attempts by an authorized agency to assist, develop and encourage a meaningful relationship between the parent and child, and the petitioning agency bears the burden of proving — by clear and convincing evidence — that such diligent efforts were made" (Matter of Issac Q. [Kimberly R.], 212 AD3d 1049, 1050-1051 [3d Dept 2023] [internal quotation marks, brackets, ellipsis and citations omitted], lv denied 39 NY3d 913 [2023]; see Matter of Konner N. [Justin O.], 235 AD3d 1112, 1113 [3d Dept 2025]; Matter of Nikole V. [Norman V.], 224 AD3d 1102, 1103 [3d Dept 2024], lv denied 41 NY3d 909 [2024]). "To satisfy this duty, [the agency] must make practical and reasonable [*2]efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child[ren]'s progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Carter A. [Courtney QQ.], 121 AD3d 1217, 1218 [3d Dept 2014] [citations omitted]; accord Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1002-1003 [3d Dept 2017]). "Notably, diligent efforts will be found where appropriate services are offered but the parent refuses to engage in them or does not progress" (Matter of Carmela D. [Shameeka G.], 232 AD3d 1126, 1128 [3d Dept 2024] [internal quotation marks and citations omitted], lvs denied 43 NY3d 903 [2025], 43 NY3d 903 [2025]).
The December 2018 removal of the children was precipitated by the mother's arrest for engaging in domestic violence with her former partner.[FN1] The associated October 2019 dispositional order accordingly required, among other things, that the mother participate in domestic violence programming, in addition to parenting classes and mental health evaluations and services. Throughout the fact-finding hearing, several providers, as well as petitioner's caseworkers, testified to the various recommended services that were provided to the mother and were necessary for her to complete and benefit from before the children could be returned to her. Petitioner made various efforts to facilitate visitations between the mother and the children on a regular basis, provided transportation resources and communicated with the foster parents to arrange phone calls between the mother and the children. Petitioner also made diligent efforts to keep the mother informed about the children's placements as well as their medical care, ensuring that the mother remained informed as to their condition. "Given the foregoing, Family Court did not err in determining that petitioner satisfied its threshold burden of establishing that it exercised diligent efforts to encourage and strengthen the parental relationship" (Matter of Konner N. [Justin O.], 235 AD3d at 1114 [internal quotation marks and citations omitted]; see Matter of Daimeon MM. [Laurie MM.], 230 AD3d 1416, 1417-1418 [3d Dept 2024], lv denied 42 NY3d 910 [2025]; Matter of Ryan J. [Taylor J.], 222 AD3d 1207, 1209-1210 [3d Dept 2023], lv denied 41 NY3d 909 [2024]).
"Once diligent efforts have been shown, the petitioner must then prove by clear and convincing evidence that the respondent failed to substantially plan for the child's future" (Matter of Issac Q. [Kimberly R.], 212 AD3d at 1051 [internal quotation marks, brackets and citations omitted]; see Matter of Drey L. [Katrina M.], 227 AD3d 1134, 1137 [3d Dept 2024]). "To substantially plan, a parent must, at a minimum, take meaningful steps to correct the conditions that led to the child's initial removal. The parent's plan must be realistic and feasible, and his or [*3]her good faith effort, alone, is not enough" (Matter of Harmony F. [William F.], 212 AD3d 1028, 1031 [3d Dept 2023] [internal quotations marks and citations omitted]; see Matter of Gabriel J. [Christina I.], 232 AD3d 1093, 1094 [3d Dept 2024], lv denied 43 NY3d 901 [2025]). "In assessing whether petitioner has demonstrated permanent neglect, [this Court] accord[s] great weight to the factual findings and credibility determinations of Family Court, and its findings will not be disturbed unless they lack a sound and substantial basis in the record" (Matter of Daimeon MM. [Laurie MM.], 230 AD3d at 1417 [internal quotation marks and citations omitted]; see Matter of Caylin T. [Christine T.], 229 AD3d 859, 861 [3d Dept 2024]).
The mother's participation in the aforementioned services was not generally an issue, as petitioner's caseworker and other witnesses acknowledged that the mother had appropriate attendance with the programs that she was referred to. Notwithstanding that effort, the record readily establishes that the mother failed to meaningfully benefit from those services. With respect to her parenting abilities, the testimony from the various service providers indicates that both of the children had certain behavioral issues and that visitations between the children and the mother often devolved into chaos.[FN2] In connection with these visits, the mother was coached on different strategies to employ, to which she was generally unreceptive, disregarding any advice from service providers or outright ignoring them. The testimony from numerous service providers also established that during visitation the mother frequently would demonstrate minimal interaction with the children, often sitting on the couch for the duration of the visit. Although the mother presented testimony from certain providers who gave a more favorable account of the mother's visits, we defer to Family Court's assessments of credibility on such matters (see Matter of Colby R. [David Q.], 199 AD3d 1192, 1196 [3d Dept 2021]; see also Matter of Corey MM., [Cassandra LL.], 177 AD3d 1119, 1123 [3d Dept 2019]). Thus, despite the mother's participation in parenting classes, Family Court's determination that she had failed to benefit from doing so is supported by the record (see Matter of Jase M. [Holly N.], 190 AD3d 1238, 1242 [3d Dept 2021], lvs denied 37 NY3d 901 [2021], 37 NY3d 901 [2021]; Matter of Chloe B. [Sareena B.], 189 AD3d 2011, 2013 [3d Dept 2020]; Matter of Brielle UU. [Brandon UU.], 167 AD3d 1169, 1172-1173 [3d Dept 2018]; compare Matter of Victor WW. [Salma XX.], 96 AD3d 1281, 1283 [3d Dept 2012]).
Further, it is evident that the mother was not inclined to resolve the most prominent issue that led to the children's removal, her history of domestic violence with her then-partner at the time of the proceeding. The testimony established that there were three separate domestic violent incidents after the children were removed and that she was incarcerated on at least two occasions[*4].[FN3] To that end, visits with the youngest child had progressed to unsupervised and overnight until another report of domestic violence in July 2020 led to the mother's incarceration. Notably, throughout the period after the children were removed, the mother continued to insist on living with that partner, despite being frequently informed that doing so was a barrier to the children returning to her care. The testimony also reflected various instances where conversations with caseworkers and other service providers devolved to the mother yelling angrily. Although she had participated in some anger management, the aforementioned events prompted requests to undergo further classes, which the mother refused. The foregoing establishes "the mother's failure to acknowledge and correct the conditions that led to the removal of the children[, which] contributed to her inability to plan for their future" (Matter of Carmela D. [Shameeka G.], 232 AD3d at 1129; see Matter of Dustin D. [Paul D.], 222 AD3d 1250, 1253 [3d Dept 2023], lv denied 41 NY3d 904 [2024]; Matter of Cordell M. [Cheryl O.], 150 AD3d 1424, 1425 [3d Dept 2017]; Matter of Arianna BB. [Tracy DD.], 110 AD3d 1194, 1197 [3d Dept 2013], lvs denied 22 NY3d 858 [2014], 22 NY3d 858 [2014]; Matter of Destiny CC., 40 AD3d 1167, 1169 [3d Dept 2007]).
Finally, although the mother introduced testimony on her behalf that reflected a tense relationship with the caseworker assigned to her matter for the bulk of the relevant time period, the mother's claims of abuse by that caseworker lack support in the record. The general agreement from the testimony of the various service providers was that the mother would become agitated when discussing a number of topics with those providers and would frequently raise her voice and use profanity. Despite the tension between the mother and her caseworker, the record bears out that the caseworker consistently sought to provide the mother with the necessary support toward the goal of reunification with the children, and there is no indication that the occasional disagreements rose to a level constituting abuse. Accordingly, deferring to Family Court's credibility assessments and factual determinations, we are altogether satisfied that the court's decision with respect to the mother's failure to substantially plan for the children's future is supported by a sound and substantial basis (see Matter of Brielle UU. [Brandon UU.], 167 AD3d at 1173; Matter of Arianna I. [Roger I.], 100 AD3d 1281, 1283 [3d Dept 2012]).
As to disposition, the mother contends that Family Court should have imposed a suspended judgment rather than terminating her parental rights. "[F]ollowing an adjudication of permanent neglect, the sole concern at a dispositional hearing is the best interests of the child, and there is no presumption that any particular disposition, including the return of a child to a parent, promotes such interests. While the court may decide to issue a suspended judgment rather than [*5]terminating parental rights, a suspended judgment is only appropriate where a parent has made significant progress such that a brief grace period would allow him or her to demonstrate the ability to be a fit parent, and such delay is consistent with the child's best interests" (Matter of Carmela D. [Shameeka G.], 232 AD3d at 1130-1131 [internal quotation marks, brackets and citations omitted]; see Matter of Gabriel J. [Christina I.], 232 AD3d 1093, 1097 [3d Dept 2024], lv denied 43 NY3d 901 [2025]; Matter of Issac Q. [Kimberly R.], 212 AD3d at 1054).
We are unpersuaded that Family Court's choice amongst dispositional alternatives was in error. At the time of the dispositional hearing, the children had been in petitioner's care for more than four years. The older child had been placed in a foster home and her behavior and general temperament had markedly improved. The younger child had been placed into a residential facility shortly after transitioning to the foster placement with the older child; however, his treatment had progressed well, and he was continuing to visit with those foster parents and the older child. The testimony from the permanency care manager overseeing the children's placements indicated that the current foster home was a potential adoptive home for both children. The mother's service providers further testified that, in conversations within the two-month period prior to the hearing, they had asked the mother to reengage her prior programming due to her failure to benefit and that the mother had voiced her reluctance to do so, became angry and would ultimately end the calls. As of the date of the hearing, those witnesses had gotten no indication that the mother had reengaged with any of the requested programming. The testimony from the hearing also reflected that the mother's domestic violence issues with her former partner had persisted since Family Court's order finding that the children had been permanently neglected, as a police report was filed in October 2023 indicating that the mother had refused to leave her former partner's home. All told, given the mother's demonstrated inability to benefit from the required services, as her anger, domestic violence and parenting issues persisted, and the mother's continued resistance to making positive changes to her life, we agree that a grace period afforded by a suspended judgment would not yield any different results (see Matter of Daimeon MM. [Laurie MM.], 230 AD3d at 1419; Matter of Dustin D. [Paul D.], 222 AD3d at 1254; Matter of Chloe B. [Sareena B.], 189 AD3d at 2014; Matter of Jahvani Z. [Thomas V.-Mariah Z.], 168 AD3d 1146, 1151 [3d Dept 2019], lv denied 33 NY3d 902 [2019]). Accordingly, we will not disturb Family Court's discretionary assessment that a suspended judgment was not in the children's best interests and that it was instead appropriate to terminate the mother's parental rights and free them for adoption (see Matter of Leon YY. [Christopher ZZ.],206 AD3d 1093[*6], 1096-1097 [3d Dept 2022]; Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1005-1006 [3d Dept 2017]).[FN4]
Egan Jr., J.P., Reynolds Fitzgerald, Fisher and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The mother had two children with the former partner; those children are not the subject of this proceeding.

Footnote 2: On appeal, the mother contends that petitioner should have separated the visits between the children to allow her to better utilize her parenting skills. That assertion is belied by the testimony of numerous providers who had suggested that plan to the mother, which she routinely rebuffed.

Footnote 3: The record reflects a finding of neglect against the mother concerning one of the children with her former partner. Her former partner currently has custody of their children.

Footnote 4: To the extent that the mother suggests that Family Court's decision was tainted by its prior determination to modify the permanency goals for the children shortly before the dispositional hearing, the mother has not appealed from that order and, in any event, "we are unconvinced that, under the circumstances here, any such error constitutes a basis to disturb either Family Court's determination that [the mother] permanently neglected the child[ren] or the resulting disposition" (Matter of Samuel DD. [Margaret DD.], 123 AD3d 1159, 1163 n 4 [3d Dept 2014], lv denied 24 NY3d 918 [2015]; see generally Matter of Timothy GG. [Meriah GG.], 163 AD3d 1065, 1067 [3d Dept 2018], lvs denied 32 NY3d 908 [2018], 32 NY3d 908 [2018]).